Case 4:22-cv-02495   Document 15   Filed on 09/15/23 in TXSD   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
September 18, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEMETRE G.,[1] | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | No. 4:22-cv-2495 |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security, | § § § § § | |
| *Defendant.* | § | |

## MEMORANDUM AND ORDER

Plaintiff Demetre G. ("Plaintiff") filed this suit seeking judicial review of an administrative decision. ECF No. 1. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("the Act").[2] The Parties filed cross-motions for summary judgment. Pl.'s MSJ, ECF No. 11; Def.'s MSJ, ECF No. 14. Plaintiff seeks an order rendering benefits or remand for further consideration, arguing that the ALJ erred in

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] On December 20, 2022, based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Order Transferring, ECF No. 9.

1

her Residual Functional Capacity ("RFC") assessment because she did not include all of Plaintiff's limitations. ECF No. 11. Commissioner counters that the ALJ properly determined Plaintiff's RFC. ECF No. 14. Based on the briefing, the record, and the applicable law, the Court finds that the ALJ's RFC assessment is supported by substantial evidence and Plaintiff failed to show that additional limitations were warranted. Thus, Plaintiff's motion for summary judgment should be denied and Commissioner's motion for summary judgment should be granted.

I.  **BACKGROUND**

Plaintiff is 64 years old, R. 51, 62, 264,[3] and completed high school. R. 289. Plaintiff worked as a police secretary, administrative clerk, and a daycare worker. R. 46, 296. Plaintiff alleges a disability onset date of May 31, 2019. R. 14, 52, 63. Plaintiff claims she suffers physical impairments. R. 55, 63.

On October 25, 2019, Plaintiff filed her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. R. 255, 264. Plaintiff based[4] her application on vertigo, type 2 diabetes, diabetic neuropathy, sciatica in her back and legs, and degenerative disc disease/disc

---

[3] "R." citations refer to the electronically filed Administrative Record, ECF No. 6.

[4] For Plaintiff's disability insurance benefits, the relevant time period is May 31, 2019—Plaintiff's alleged onset date—through September 30, 2024—Plaintiff's last insured date. R. 14. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin,* 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel,* 219 F.3d 378, 396 (5th Cir. 2000).

herniation. R. 52, 63. The Commissioner denied her claim initially, R. 51–72, and on reconsideration. R. 75–120.

A hearing was held before an Administrative Law Judge ("ALJ"). An attorney represented Plaintiff at the hearing. R. 33, 36. Plaintiff and a vocational expert ("VE") testified at the hearing. R. 33, 37, 46. The ALJ issued a decision denying Plaintiff's request for benefits.[5] R. 14–25. The Appeals Council denied Plaintiff's request for review, upholding the ALJ's decision to deny benefits. R. 1–6.

Plaintiff appealed the Commissioner's ruling to this court. Compl., ECF No. 1.

## II. STANDARD OF REVIEW OF COMMISSIONER'S DECISION.

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a

---

[5] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ here determined Plaintiff was not disabled at step four. R. 25. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date through her date last insured. R. 14 (citing 20 C.F.R. § 404.1571 *et seq.*, § 416.971 *et seq.*). At step two, the ALJ found that Plaintiff has the following severe impairments: diabetes, lumbar degenerative disc disease, obesity, and CSF otorrhea. R. 14–16 (citing 20 C.F.R. §§ 404.1520 (c), 416.920(c)). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations that would lead to a disability finding. R. 16–19 (referencing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), except she limited to standing and walking for a total of 2 hours in an eight hour workday; occasional climbing ramps/stairs; no climbing ladders/ropes/scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; and she can have frequent exposure to work place hazards such as unprotected moving machinery, unprotected heights and commercial driving. R. 19–25. At step four, the ALJ determined that through the date last insured, Plaintiff was able to perform her past relevant work as a police secretary. R. 25 (citing 20 C.F.R. §§ 404.1565, 416.965). Therefore, the ALJ concluded that Plaintiff was not disabled. R. 25.

party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . ., with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.* Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de*

4

*novo*, or substitute its judgment for that of Commissioner, even if the evidence preponderates against Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for Commissioner's decision and involves more than a search for evidence supporting Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

### III. DISABILITY INSURANCE BENEFITS AND SUPPLEMENTAL SECURITY INCOME UNDER THE ACT.

The Act permits the payment of insurance benefits to persons who have contributed to the program and who suffer a physical or mental disability. 42 U.S.C. § 423(a)(1)(D). These payments are referred to as disability insurance benefits. The Act also permits Supplemental Security Income ("SSI") payments to the aged, blind, and disabled to assure that their income does not fall below the poverty line. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.110. Although these programs are distinct,

applicants must prove "disability" under both sections. *See* 42 U.S.C. § 423(d)(1)(A) (disability insurance); 42 U.S.C. § 1382c(a)(3)(A) (SSI). Both sections define disability using virtually the same language. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (using "unable" rather than "inability"). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). "The suffering of some impairment does not establish disability; a claimant is disabled only if he is 'incapable of engaging in any substantial gainful activity.'" *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1987)). "The law and regulations governing the determination of disability are the same for both programs." *Roberts v. Colvin*, 946 F. Supp. 2d 646, 657 (S.D. Tex. 2013) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

**IV. THE SHIFTING BURDEN OF PROOF.**

The Act places the burden of establishing disability on the claimant. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). To be entitled to disability insurance benefits, a claimant "must show that he was disabled on or before the last day of his insured status." *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981). SSI benefits are dependent on proof of disability and indigence, and a claimant can receive SSI payments once he applies to the program, no matter how long he has been disabled. *Torres v. Colvin*, No. 4:13-cv-2571, 2014 WL 4064002, at *6 (S.D. Tex. Aug. 15, 2014) (citing 42 U.S.C. §§ 1382a, c(a)(3), *Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999), and 20 C.F.R. § 416.335).

Commissioner applies a five-step sequential process to determine disability status. *Id.* The claimant bears the burden of proof at the first four steps to establish that a disability exists. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *2 (S.D. Tex. Nov. 30, 2012). The burden shifts to Commissioner at step five to show that the claimant can perform other work. *Id.* The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step in the process Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

**V. COMMISSIONER IS ENTITLED TO SUMMARY JUDGMENT.**

Plaintiff raises one issue: that substantial evidence does not support the RFC because the ALJ contradicted herself by finding Plaintiff's CSF otorrhea was a

severe impairment, but then failing to include any hearing loss limitation in the RFC to accommodate the impairment. ECF No. 12 at 4.[6] Plaintiff contends that "the evidence unquestionably shows that she has a certain degree of hearing loss . . . resulting from her [CSF] otorrhea," but "the ALJ did not acknowledge Plaintiff's multiple audiograms showing hearing loss, nor discuss Plaintiff's hearing loss at all." *Id.* at 7. Plaintiff asserts that this omission "is striking," because the ALJ asked the VE "if Plaintiff could perform [her past work] with an RFC limitation for work only in a 'quiet environment.'" *Id.* Commissioner responds that substantial evidence supports the ALJ's RFC without any hearing limitations because Plaintiff did not testify to hearing loss or mark "hearing" as affected in in her Function or Disability Reports, ECF No. 14-1 at 5–6, her medical records indicate normal hearing and good comprehension, *id.* at 6, and the State Agency Medical Consultant ("SAMC") opined that "Plaintiff could perform work with no assessed communicative limitations and with an unlimited ability to work despite noise." *Id.* at 6, 8.

Courts "have found that when impairments are identified as severe at step two but an RFC[7] does not include any limitations for those impairments, the RFC in

---

[6] Cerebrospinal fluid otorrhea ("CSF otorrhea") is a "condition in which spinal fluid drains from the ear." *See* https://uvahealth.com/services/benign-brain-tumor/csf-otorrhea (last visited August 16, 2023).

[7] "[T]he RFC is defined as the most that a person can still do despite recognized limitations." *Winston v. Berryhill*, No. 3:16-CV-419-BH, 2017 WL 1196861, at *13 (N.D. Tex. Mar. 31, 2017), *aff'd*, 755 F. App'x 395 (5th Cir. 2018) (citing 20 C.F.R. § 404.1545(a)(1) (2003)). "An individual's RFC should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources." *Id.* (citing 20

effect contradicts the step two finding," which "generally warrants remand." *Winston*, 2017 WL 1196861, at *13 (collecting cases). "However, keeping in mind the differences between a Step Two severity finding and the RFC assessment, an ALJ 'does not err solely because [he or] she finds an impairment "severe" at step two but does not attribute any limitation to that impairment in assessing the claimant's RFC.'" *Esser*, 2021 WL 9569834, at *5 (quoting *Sarah B. v. Berryhill*, No. 1:17-cv-0080-BL, 2018 WL 3763837, at *9 (N.D. Tex. June 29, 2018), *rec. adopted*, No. 1:17-cv-080-C-BL, 2018 WL 3756944 (N.D. Tex. Aug. 8, 2018); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)).

Instead, courts require ALJs to provide an explanation as to why "having identified an impairment as severe at Step Two, [she] did not incorporate specific limitations in the RFC based on that severe impairment." *Id.* Such explanation should demonstrate that "the ALJs considered the limitations that were encompassed by the severe impairments or accounted for the limitations in some respect . . . ." *Id.* at *2 (quoting *Campbell v. Berryhill*, No. 3:15-CV-03913, 2017 WL 1102797, at *11 (N.D. Tex. Feb. 24, 2017), *rec. adopted*, No. 3:15-CV-03913, 2017 WL 1091651 (N.D. Tex. Mar. 23, 2017)).

At Step Two here, the ALJ found Plaintiff's CSF Otorrhea to be a severe

---

C.F.R. § 404.1545(a)(3) (2012); SSR 96-8p, 1996 WL 374184, at *1); *see also Esser v. Saul*, No. 2:21-CV-00045, 2021 WL 9569834, at *5 (S.D. Tex. Dec. 14, 2021), *rec. adopted sub nom. Esser v. Kijkazi*, No. 2:21-CV-00045, 2022 WL 4596310 (S.D. Tex. Sept. 30, 2022)).

9

impairment, but also stated that Plaintiff's hearing loss was not severe, causing no more than minimal limitations. R. 15. The ALJ then assessed Plaintiff's RFC as:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to standing and walking for a total of 2 hours in an eight hour workday; occasional climbing ramps/stairs; no climbing ladders/ropes/scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; and she can have frequent exposure to work place hazards such as unprotected moving machinery, unprotected heights and commercial driving.

R. 19. The ALJ noted that "[i]n making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p," and "also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c." R. 19.

Specifically, the ALJ detailed Plaintiff's relevant medical records referencing her CSF Otorrhea diagnosis. The ALJ mentioned that in June 2019, Plaintiff reported dizziness and lightheadedness associated with drainage from her ear. R. 20.[8] In September 2019, Plaintiff reported ongoing "vertigo/otorrhea," and a C/T scan of

---

[8] R. 429 (6/2/2019 Fort Bend Medical and Diagnostic Center record indicating Plaintiff was hospitalized for dizziness on 6/10/2019 and was being treated for otorrhea but does not include hearing complaints); R. 432 (June 2019 Fort Bend Medical and Diagnostic Center record noting "dizziness–has possible CSF leak/otorrhea").

"the temporal bone showed effusion in the middle ear." R. 20.[9] In November 2019, Plaintiff "underwent pre-op evaluation for a right craniotomy of dural/CSF leak with bone graft," and at that time, Plaintiff "noted as independent in activities of daily living." R. 20,[10] 21. After review of Plaintiff's medical records, the ALJ remarked that Plaintiff had CSF Otorrhea that required surgery, but surgery had been postponed because Plaintiff "has not been capable of getting her blood sugar under control in order to have her leak fixed." R. 22. The ALJ concluded that "[t]he record does not support [Plaintiff's] allegations of significantly diminished ability to remain engaged in many activities of daily living." R. 22. Thus, the Court finds that these medical records indicated Plaintiff suffered from dizziness and lightheadedness associated with her CSF Otorrhea—both of which were arguably accounted for in Plaintiff's RFC—but, not hearing loss.

Next, the ALJ's written decision discussed Plaintiff's testimony. R. 19–20. At the hearing, Plaintiff listed numerous symptoms and subjective complaints, but did not mention any hearing loss. R. 37–45. During the hearing, she informed the ALJ that she needed "ear surgery," presumably to resolve her CSF Otorrhea. Notably, she stated that the ear surgery would improve her vertigo but did not mention hearing

---

[9] R. 422–23 (9/30/2019 Fort Bend Medical and Diagnostic Center record indicating C/T scan results and continued complaints of otorrhea, does not list hearing as a complaint).

[10] R. 415 (11/04/2019 Fort Bend Medical and Diagnostic Center record indicating Plaintiff scheduled for surgery to address otorrhea/dizziness, no mention of hearing complaints).

11

loss. R. 45.[11] Finally, the ALJ considered each medical opinion—of those she found persuasive, none indicated that Plaintiff needed any hearing restrictions. R 24.[12] To the contrary, both SAMCs found that Plaintiff could experience unlimited noise and showed no communication limitations. R. 24–25. Plaintiff submitted testimony from her own VE, who also did not include any discussion of hearing restrictions.[13]

Based on the above, it is evident that the ALJ provided a sufficient explanation of her findings, and specifically demonstrated that she considered the severe impairment of Plaintiff's CSF Otorrhea in making the RFC assessment even though she did not include any hearing limitation. *Sarah B.*, 2018 WL 3763837, at *9. Although Plaintiff points to a few audiogram reports that show diminished hearing, the ALJ is not required to discuss every piece of evidence in the record. *See Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) ("That the ALJ did not

---

[11] Plaintiff did not include any hearing loss limitations in her function reports. R. 304–11 (4/10/2020 Function Report where Plaintiff did not select available hearing option as a function affected by her illnesses); R. 329–36 (12/15/2020 Function Report where Plaintiff did not select available hearing option as a function affected by her illnesses). To the contrary, as the ALJ noted, Plaintiff indicated that she could follow spoken instructions well. R. 15. By not raising hearing loss as an impairment in her function reports or in her testimony, Plaintiff may have waived this argument. *See Harshaw v. Colvin*, 616 F. App'x 316, 316 (9th Cir. 2015) (claimant waived a Step Two issue by raising it for the first time before the district court because the existence of some evidence in the medical records regarding those conditions was not sufficient to have put the ALJ and the Appeals Council on notice that that the conditions constituted impairments). Nonetheless, because the ALJ was aware of potential hearing loss as evidenced by her finding it was not a severe impairment, the Court addresses the merits of Plaintiff's argument.

[12] R. 58 (10/7/2020 Dr. Dennis Pacl's RFC Report indicating Plaintiff may experience unlimited noise and demonstrated no communicative limitations); R. 91–98 (2/5/2021 Dr. Patty Rowley's RFC Report indicating Plaintiff may experience unlimited noise and demonstrated no communicative limitations).

[13] R. 376–78 (8/19/2021 Pre-hearing Memorandum from VE Andrew Youngman).

specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence.").[14] The ALJ's decision that hearing loss was not a severe impairment and no limitation due to Plaintiff's CSF Otorrhea was required is supported by substantial evidence. None of the medical experts found any hearing limitation, Plaintiff's daily activities did not indicate that she was impacted by any hearing limitations, and Plaintiff did not express any difficulty with hearing and said could follow spoken instructions well.

In sum, the ALJ's RFC determination contains no inconsistencies warranting remand and is supported by substantial evidence. *Esser*, 2022 WL 4596310, at *3 (citing *Winston*, 2017 WL 1196861, at *14) (finding no error where "the ALJ considered the medical impairments from step two when she made her RFC determination and assessed Plaintiff's limitations based on their impact on her actual ability to do work.")).

## VI.   CONCLUSION

Therefore, it is **ORDERED** that Plaintiff's motion for summary judgment, ECF No. 11, is **DENIED**. It is further **ORDERED** that Commissioner's motion for

---

[14] Plaintiff also argues that in finding Plaintiff "not disabled," the ALJ ignored VE testimony that if Plaintiff were restricted to only a "quiet environment" she would be incapable of performing past work. Nothing bound the ALJ to adopt any of the hypothetical questions presented to the VE. *See Stewart v. Saul*, No. 3:20-CV-033-DCP, 2021 WL 1176772, at *13 (E.D. Tenn. Mar. 29, 2021) ("The ALJ or Plaintiff's counsel may question the VE with a hypothetical question containing a possible RFC that was not adopted.").

summary judgment, ECF No. 14, is **GRANTED**. The decision of the Commissioner is **AFFIRMED**. This case is **DISMISSED WITH PREJUDICE**.

Signed at Houston, Texas, on September 15, 2023.

*Dena Palermo*
_____
**Dena Hanovice Palermo
United States Magistrate Judge**